UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

VS.                                              Criminal Case No.: 2:21-cr-14021-AMC-1

GARRETT PAKO
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

GARRETT PAKO, by and through his undersigned attorney, respectfully submits his Sentencing Memorandum for this Honorable Court's consideration. Mr. Pako requests this Court to review the circumstances of his case pursuant to 18 U.S.C. § 3553 and impose a sentence below the applicable guideline range.

## STATEMENT OF FACTS

1. Pursuant to a Plea Agreement the defendant pled guilty to Count 1 of the indictment. Count 2 charges the defendant with Attempted Coercion and Enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) which carries a minimum of 10 years in prison and a maximum of life imprisonment.

2. Mr. Pako's sentencing hearing is set before this Honorable Court on January 6th, 2022, at 9:00 a.m.

3. The Presentence Report (PSR) calculates Mr. Pako's total offense level as a Level 27 with a criminal history category of 1. Thus, Mr. Pako is facing a guideline sentencing range of 70-87 months.

## MEMORANDUM OF LAW

### *Introduction*

This memorandum addresses the question of what the appropriate sentence for Mr. Pako is based on his conviction for this charge. As part of the analysis, this memorandum examines the issue of whether a variance is appropriate pursuant to 18 § 3553, notwithstanding the calculation of the sentence determined by the guidelines. It concludes that a variance is warranted in this case pursuant to the factors set forth under § 3553(a).

### I. *Booker and its Progeny Provides the Court with the Discretion to Impose a Sentence Below the Guideline Range*

A district court's discretion is no longer limited by the guidelines since its matrix is now considered merely advisory. *United States v. Booker* 543 U.S. 220, 245-67 (2005). Thus, a court is now unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States*, 518 U.S. 81 (1996)). The use of the guidelines in other than an advisory function violates the defendant's Sixth Amendment Rights. *Booker*, 543 U.S. at 244-45 (Part Two, Breyer, J.).

Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). To achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors. *Id.* § 3553(a)(1)-(7). In *United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006), the court summarized the factors that must be considered under § 3553(a), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . .;
> (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

Against this backdrop of factors, Mr. Pako submits that a variance is warranted in his case.

## II.   *An Examination of the § 3553 Factors Establishes that a Variance is Warranted in this case*

The following sections analyze the § 3553 factors against the factual backdrop of this case. Such an analysis is critical because it underscores the inherent necessity of Mr. Pako's requested sentence.

### 1.   History and Characteristics of the Defendant

Mr. Pako has been extremely remorseful from the onset of this case. His biggest concern is not for himself but for this family. Even though they are extremely disappointed in Mr. Pako's actions and behavior, his family remains extremely supportive throughout this difficult time. This, however, is taking a toll on them mentally and emotionally.

Mr. Pako underwent a mental health evaluation prior to his arrest after understanding his pornography addiction. Mr. Pako has not participated in mental health treatment but is amenable to treatment and believes it would help. Mr. Pako met his wife while he was enlisted in the United States Air Force. He served from May of 2012 through May of 2018 when he was honorably discharged. Following his discharge, Mr. Pako has served in security as a Staff Sergeant (E-5)

and was employed for a government contractor who provided security services at military installations. Mr. Pako and his wife have two children, ages five and three, who live in Japan. Mr. Pako has been happily married since September 30, 2015. Mr. Pako has no previous criminal or substance abuse history.

*D. Leave to argue additional factors at time of sentencing.*

There are additional grounds for departure that would be more appropriately argued in court.

## CONCLUSION

In conclusion, Mr. Pako is facing a lengthy prison term. Mr. Pako understands the severity of these charges and has expressed remorse and regret for his actions. There are tools that the federal probation system has that would benefit Mr. Pako and his family, that would greatly reduce his chances of recidivism. I believe it would be beneficial for Mr. Pako, his family, and the community as a whole if this Court limited his sentence to the ten (10) year minimum mandatory with mental health treatment and any other programs the Court believes is appropriate under these circumstances.

The circumstances presented in Mr. Pako's case warrant a variance below the applicable guideline range. Because the decision in *Booker* has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, Mr. Pako respectfully submits that a variance is appropriate pursuant to § 3553(a).

Respectfully submitted,

/s/ Blair Jackson, Esq.
Law Office of Corey Cohen and Associates
Florida Bar No. 912956
21 Park Lake Street

Orlando, Florida 32803
corey@coreycohen.com
Telephone: 407-246-0066

## CERTIFICATE OF SERVICE

Hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court(CM/ECF) on this 5th of January, 2022, by using the CM/ECF system, which will send a notice of electronic filing to Assistant United States Attorney.

/s/ Blair Jackson, Esq.
Law Office of Corey Cohen and Associates
Florida Bar No. 912956
21 Park Lake Street
Orlando, Florida 32803
nicole@coreycohen.com
Telephone: 407-246-0066

# CHARACTER LETTERS



Michael
Active 6 minutes ago

I worked with him at Shariki communications site for two years I believe (time) and met him and his family a few times. Garet was liked very much at work and always conducted himself in a professional manner. He was was missed very much by our security team and we were hoping that he would return soon. I hope things work out for him could he contact me via your messenger?

I want to be sure that you are who you say you are, we did work for a government contractor on a site that is sensitive in nature. I hope you understand.

To Whom It May Concern:

My name is Michael Loucks I'm a retired MSgt (USAF). I worked with Garrett Pako for over a year providing security on a US Army site in Japan.

Garrett is a dedicated and trustworthy friend that I enjoyed working with. Garrett always improved everything he worked on and was a valuable member of the team and community. We spent many hours talking to each other about his family and future. Many of his coworkers and I dedicated time in helping him advance his life goals at work and pushed him to improve himself off duty with education and financial security. He was always willing to listen to advice and worked hard to be promoted at work to Sergeant.

I'm available to confirm the facts in this letter as necessary.

Sincerely,

Michael Loucks

Your Honor,

    My name is Gary Pako and I am Garrett's father. I live in Cheyenne, Wyoming and have worked at the Lowe's RDC for the past 16 years. I was in the room when Garrett and his twin brother Garth were born. Garrett is the oldest by 2 minutes.

    I would sincerely like to vouch for the good character of my son. I understand the charges that have been set upon him. In my opinion they are so out of character that there must have been other factors that brought him to this dark place.

    I have no worries that Garrett can be trusted. He has always been honest, dependable, and caring. A person others can look to for help.

    I am so proud of Garrett's six years of honorable service in our United States Air Force.

    I pray for your leniency in Garrett's sentencing. Garrett has a room available at his brothers house here in Cheyenne which is the same house that I live in.

        Sincerely Yours,
        Gary M Pako
        (307) 640-2195
        RanFly@live.com

MEMORANDUM FOR ALL CONCERN

FROM: Raymond T. Simpson

SUBJECT: Character Statement for Garrett Pako

1. My Name is TSgt Simpson. I currently serve as a Non Commission Officer in Charge of Training for Joint Base Andrews. I will have honorably served for 16 years come June 2022. I was previously assigned to Misawa Air Base as a Base Defense Operator Controller, Unit Deployment Manager and Vehicle Control Officer

2. I met Pako when I had a change of assignment from Korea to Japan. I was assigned to night shift where I met Pako. Although I was not his direct supervisor, I worked closely with him for over 16 months. Pako served as a Patrolman and later became the Base Defense Operator Controller. Throughout this period of time, I had the opportunity to witness his work ethic, professionalism, and ability to lead.

Pako displayed an unmatched work ethic. His drive and motivation played a key role in the accomplishment of the flights mission and the development of his peers and airman:  He would continuously arrive early, stay as late as he needed to ensure the daily tasks were met, and to prepare for the next day. He would selflessly sacrifice his time on countless occasions, in order to lift the weight off his struggling peer's backs. I have had to pull him aside multiple times to explain how the duties can run you down and burn you out if you don't take the time to charge your own batteries; but helping his peers seemed to energize him.

Being a leader is where Pako shined the most. Pako, took responsibility for any of his mistakes, never made excuses for his short comings, and always gave his airman the credit for their successes. He was not afraid to admit when he lacked knowledge of certain procedures or tasks; knowing I had the most experience. Pako would never hesitate tocome to me for guidance or advice to ensure he didn't look unprofessional.

Pako had always demonstrated the highest level of integrity and never acted as someone who would violate his position of trust. He is easily in the top three NCOs that I have had the pleasure of working with and the one with the most funniest dad jokes.

3. Please contact me if you have any questions or concerns. I can be reached at raymond.simpson@us.af.mil or 301-541-6212.



**DEPARTMENT OF THE AIR FORCE**
DETACHMENT 1, 27TH SPECIAL OPERATIONS MISSION SUPORT GROUP (AFSOC)
CANNON AIR FORCE BASE NEW MEXICO

14 Dec 21

MEMORANDUM FOR ALL REVIEWING AUTHORITIES

FROM: SSGT NESTOR C. ALBALOS III

SUBJECT: Character Statement for Garrett M. Pako

1. My name is Staff Sergeant Nestor Albalos, and I am writing this character statement on behalf of Mr. Garrett Pako. I have been actively serving in the United States Air Force for 10 years, and am currently a Deployed Aircraft Ground Response Element Team Leader with the 27th Special Operations Mission Support Group Detachment 1, Air Force Special Operations Command, Cannon Air Force Base, New Mexico.

2. I first met Garrett Pako as Airman First Class Pako back in January of 2013, when we were stationed at Osan Air Base, Republic of Korea together. We were assigned to Delta Flight (Air Force equivalent to an Army or Marine platoon), though we were within separate sections; Garrett worked within the gate section, controlling access to the installation's access control points or gates, while I worked standard security operations. Our sections merged in February of 2013 to enhance manpower and allow better post rotations, and that's when I got to work with Garrett. I would be posted with him throughout the year that we were stationed at Osan, and came to admire his work ethic. One thing that I immediately noticed about Garrett was his punctuality, attention to detail, and adherence to regulations. What really struck me about him though, was his warm and welcoming personality. Although Garrett was an exceptionally hard worker, he was very easy going and effortless to get along with; I always felt welcomed in his presence, and thoroughly enjoyed working with him. It wasn't until I found out Garrett and I would be PCSing (Permanent Change of Station, or moving) to Misawa Air Base, Japan, that I would come to really get to know him. We would come to share a deeper bond, and I would learn to call him my brother.

3. After taking leave in the states for the 2013 Holiday, Garrett and I both reported to Misawa AB, Japan in January 2014. From that moment forward, we were an inseparable team. We did everything together, from being assigned to the same flight for work, to enjoying our off time together. I would bear witness to Garrett's selection of Senior Airman Below the Zone (a highly competitive early promotion to E4 6 months in advance) for his outstanding service. Garrett became someone that I could rely on, he would willingly go out of his way to help out anyone in need, the type of guy that would give you the shirt off of his back. He was often the voice of reason and rational within any situation we found ourselves in, the perfect complement to the way that I would approach things in my younger years, and I would always rely on his word and counsel. Garrett was someone that I always strived to emulate because he was tranquil, cool, calm, and collected. He was always methodical in his approach to things, and never made rash decisions; always understanding the outcomes of his choices and their second and third order of effects. I never once witnessed him commit any wrongdoings because he always had a strong moral compass. The time that I spent with Garrett would help me become a better person, and he would go on to instill the teachings of his wisdom to his family.

**AIR COMMANDOS**

4. Garrett first introduced me to Chika (then Chika Yamamoto) back in March 2014. Chika and Garrett would spend a great deal of time together as their relationship developed, and we would often spend time together. Chika was always very outgoing, and I enjoyed her presence in the company of our military family. As I grew to know Chika, I would consider her an extension of Garrett, and therefore family. I always revered their happiness together, and I would bear witness to the love that they shared by having the honor of being Garrett's Best Man at their wedding in September of 2015. I was ecstatic when they revealed that Chika was pregnant with their daughter, Alice. Though my time at Misawa was coming to an end, I would spend time with the Pako family when time permitted. I PCSed to Barksdale Air Force Base in Louisiana in May 2016, and that would be the last time that I would physically see the Pako family when they waved goodbye at the airport. I would keep in touch with Garrett and Chika over the years, and continue to do so to this day. When I found out that they would be having a second child, their son Odin, I was yet again excited to see another addition to our family. Watching the Pako family grow and develop has filled me with so much joy, and seeing pictures of their family enjoying life together soothes my soul. Garrett would do anything for them, and has applied his teaching to be one of the core foundations of the family. Though we may not speak as often, the Pako family knows that I will be there for them whenever they need me, just like they will always be there for me.

5. I have been informed by Carmen New, Garrett's mother, about the situation he is in. Although I am unaware of the accusation that proceed him, I strongly believe that he would not go out of his way to commit anything devious to anyone or anything.

6. In conclusion, Garrett Michael Pako is a great man who has always been the light of righteous virtues for myself and others, but more importantly, his beautiful family. Please consider the contents of this statement before reaching a verdict. I would like to personally thank you for your time and consideration in this matter of my dearest friend. If you have any questions, comments or concerns regarding this letter, you may contact me at Cell Phone: (209) 507-1010 or Email: nestor.albalos.1@us.af.mil or jr_albalos@hotmail.com.

Respectfully submitted,

NESTOR C. ALBALOS III, SSgt, USAF
DAGRE Team Leader/27 SOMSG/Det 1

**Subject:** Brandon kronenbitter character statment

To whom it may concern.

      I Brandon kronenbitter had met Garrett Pako while on a DOD contract in northern Japan in 2019. Garrett was a guard and was in charge of training , as well as the team back up interpreter. The training consisted of making sure the team had all training updated required to stay on contract. And updating the team list.  Back up interpreter consisted Maning the E.C.P (entry control point) and interacting with any and all Japanese that may come on to the site, along with issuing badges to site personal and site visitors and seeing sensitive information along with base operations not everyone is aloud to do this job and is hand picked by our LT. (Lieutenant) witch is then approved by our PM (project manager) Garrett  and my self became friends as he was training me. we often went out to dinner on work nights 3 - 4 times a week depending and the occasional free time out side of work. Our friendship had grown and I had the pleasure of meeting his wife and daughter a few times. While Garrett and my self hung out we talked about life and life in Japan and past military experiences and shared a few laughs. Garrett has always shown to be a LOVING FATHER, a man with HONER and INTEGRITY in all aspects of life in and out side of work. Always by the book and never cutting corners.  I am proud to call Garrett a friend.

Brandon Kronenbitter

Brandon Beckford

11453 NW 39 CT, Coral Springs, FL, 33065.

954-548-0401

Brandon.beckford6@gmail.com

December 16, 2021

My name is Brandon Jae Beckford. I am now a veteran of the United States Airforce with six years active duty and two years active reserves. I am writing this character statement on the behalf of Garret M. Pako.

Garrett M. Pako and I have been friends since 2014. We first met at the Japanese Airbase Misawa. Within our first meeting as a stranger, he immediately welcomed me into a circle of friends we call family. He gave me the impression that he unconditionally cared for people. He was very compassionate even towards me a newly arriving stranger. We grew very closely as friends due to his compassionate nature of always looking out for everyone. He was the friend that was always there when you needed him. Everyone in the Security Forces Police unit knew and loved Garret. His personality was enveloping in warmth and acceptance of others.

Garret was always a stay-at-home kind of person but he would always be willing to go out his way to help others in need regardless of circumstances. He usually was the responsible one in our group of friends. Sort of like the big brother that knew what was best for you. Garret was always a very cheerful person. Always smiling and very attentive of the feeling of others. His fascination with learning about new cultures would always surprise me. In our group friends he was the rational one that would protect those from making bad decisions. His voice was the one of morality and he also would never commit any wrongful acts.

He would also give me advice on life or relationships since we both were dating japanese women. During our time in Japan, Garret found the love of his life and our group we called family grew a little bigger. Garret would later marry a woman by the name of Chika. This new marriage was everything for our friend whom prioritized being a good husband more than anything. I could tell family meant everything for Garret. His attentive, loving, and caring personality shine even brighter now next to Chika. I've always aspired to have a marriage like my dear friend Garret.

I do not know the crime or circumstances he is being charged with but I know full well he stands on the side of innocence. So, please take this character statement into consideration before reaching a verdict. Garret is an amazing friend, husband, and brother would not knowingly harm or commit wrong doing onto anyone.

Sincerely,

Brandon Jae Beckford